1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mitchell L. Abdallah, Esq. / SBN 231804
ABDALLAH LAW GROUP, P.C.
555 Capitol Mall, Suite 725
Sacramento, California 95814
Telephone: (916) 446-1974
Facsimile: (916) 446-3371

Attorneys for Debtors:
RICHARD CHALGREN AND KAREN CHALGREN

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RICHARD CHALGREN AND KAREN CHALGREN,** | Case No. 09-56729 |
| **Debtors** | Chapter 13 |
| v | Adversary No. 10-05057 |
| **DEUTSCHE BANK NATIONAL TRUST COMPANY; DEUTSCHE BANK NATIONAL TRUST COMPANY, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE ON BEHALF OF GSR MORTGAGE LOAN TRUST 2006-OA1; AMERICAN BROKERS CONDUIT; AMERICAN HOME MORTGAGE SERVICING, INC.; DOCX, LLC; FIDELITY NATIONAL TITLE COMPANY; LENDER PROCESSING SERVICE; DEFAULT RESOLUTION NETWORK; POWER DEFAULT SERVICES; MORTGAGE ELECTRONIC RESITRATION SYSTEMS, INC. And DOES 1-100,** | **SECOND AMENDED ADVERSARY COMPLAINT FOR: FRAUD AND FRAUD IN THE INDUCEMENT; FRAUD-- CONSTRUCTIVE; NEGLIGENT MISREPRESENTATION; WRONGFUL FORECLOSURE; FRAUDULENT CONCEALMENT; VIOLATION OF AUTOMATIC STAY - 11 U.S.C. § 362(k); TORTIOUS RECORDATION OF FORGED INSTRUMENTS; DECLARATORY RELIEF; INJUNCTIVE RELIEF; CANCELLATION OF INSTRUMENT.** |
| Defendants | |

COMES NOW Plaintiffs **RICHARD CHALGREN and KAREN CHALGREN** (herein "Plaintiffs"), for causes of actions against Defendants **DEUTSCHE BANK NATIONAL TRUST COMPANY; DEUTSCHE BANK NATIONAL TRUST COMPANY, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE ON BEHALF OF GSR MORTGAGE LOAN TRUST 2006-OA1; AMERICAN BROKERS CONDUIT; AMERICAN HOME MORTGAGE SERVICING, INC.; DOCX, LLC; FIDELITY NATIONAL TITLE COMPANY; LENDER PROCESSING SERVICE; DEFAULT RESOLUTION NETWORK; POWER DEFAULT SERVICES; MORTGAGE ELECTRONIC RESITRATION SYSTEMS, INC. And DOES 1-100,** (collectively "Defendants"), its assignees and/or successors; as follows:

## JURISDICTION AND VENUE

1. This is an adversary proceeding ("Complaint") pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

2. The Court has jurisdiction to hear this Complaint pursuant to 28 U.S.C. §157(a)(b)(1), (b)(2)(I) (core proceeding), §1334(b) and 11 U.S.C. §523(a).

3. Venue is proper in the United States District Court for the Northern District of California under 28 U.S.C. § 1391(b) and (c).

4. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334.

5. This adversary proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).

6. This District is the proper venue for this proceeding pursuant to 28 U.S.C. § 1409.

7. At all times herein mentioned, Plaintiffs were over the age of eighteen and is and were residents at 411 Quail Run, Aptos, Santa Cruz County, California ("Subject Property"). The legal description of the Property is attached hereto as (Exhibit "A") and incorporated by this reference as though fully set forth herein.

## PARTIES

PLAINTIFFS:

8.     Plaintiffs RICHARD CHALGREN AND KAREN CHALGREN are husband and wife who at all times herein were and are the owners of real property situated in the County of Santa Cruz, commonly known as 411 Quail Run, Aptos, California (the "Property").

DEFENDANTS:

9.     At all times herein mentioned, Plaintiff is informed and believes and thereon alleges that Defendant **DEUTSCHE BANK NATIONAL TRUST COMPANTY and its assignees and/or successors**, (hereinafter referred to as "DEUTSCHE BANK") is a German business, and is and at all times herein mentioned was, a corporation, association, partnership, joint venture, and/or sole proprietorship organized and existing under the laws of the State of California and/or maintaining offices in New York City.

10.    At all times herein mentioned, Plaintiff is informed and believes and thereon alleges that Defendant **DEUTSCHE BANK NATIONAL TRUST COMPANY, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE ON BEHALF OF GSR MORTGAGE LOAN TRUST 2006-OA1 and its assignees and/or successors**, (hereinafter referred to as "DBNTC"), is and at all times herein mentioned was, a corporation, association, partnership, joint venture, and/or sole proprietorship organized and existing under the laws of the State of California.

11.    At all times herein mentioned, Plaintiff is informed and believes and thereon alleges that Defendant **AMERICAN BROKERS CONDUIT, a subsidiary of AMERICAN HOME MORTGAGE CORP., and its assignees and/or successors**, (hereinafter referred to as "AMERICAN BROKERS") is and at all times herein mentioned was, a corporation, association, partnership, joint venture, and/or sole proprietorship organized and existing under the laws of the State of California and/or maintaining offices in Dallas, Texas.

12.    At all times herein mentioned, Plaintiff is informed and believes and thereon alleges that Defendant **AMERICAN HOME MORTGAGE SERVICING, INC. and its assignees and/or successors**, (hereinafter referred to as "AMERICAN HOME") is and at all times herein

3

Second Amended Adversary Complaint

mentioned was, a corporation, association, partnership, joint venture, and/or sole proprietorship organized and existing under the laws of the State of California and/or maintaining offices in Irving, Texas.

13.     At all times herein mentioned, Plaintiff is informed and believes and thereon alleges that Defendant **DOCX, LLC and its assignees and/or successors**, (hereinafter referred to as "DOCX") is and at all times herein mentioned was, a corporation, association, partnership, joint venture, and/or sole proprietorship organized and existing under the laws of the State of California and/or maintaining offices in Alparetta, Georgia.

14.     At all times herein mentioned, Plaintiff is informed and believes and thereon alleges that Defendant **FIDELITY NATIONAL TITLE COMPANY and its assignees and/or successors**, (hereinafter referred to as "FIDELITY") is and at all times herein mentioned was, a corporation, association, partnership, joint venture, and/or sole proprietorship organized and existing under the laws of the State of California and/or maintaining offices in Santa Barbara, California.

15.     At all times herein mentioned, Plaintiff is informed and believes and thereon alleges that Defendant **LENDER PROCESSING SERVICE and its assignees and/or successors**, (hereinafter referred to as "LENDER PROCESSING") is and at all times herein mentioned was, a corporation, association, partnership, joint venture, and/or sole proprietorship organized and existing under the laws of the State of California and/or maintaining offices in Jacksonville, Florida.

16.     At all times herein mentioned, Plaintiff is informed and believes and thereon alleges that Defendant **DEFAULT RESOLUTION NETWORK and its assignees and/or successors**, (hereinafter referred to as "DEFAULT RESOLUTION") is and at all times herein mentioned was, a corporation, association, partnership, joint venture, and/or sole proprietorship organized

Second Amended Adversary Complaint

and existing under the laws of the State of California and/or maintaining offices in San Francisco, California.

17.    At all times herein mentioned, Plaintiff is informed and believes and thereon alleges that Defendant **POWER DEFAULT SERVICES and its assignees and/or successors**, (hereinafter referred to as "POWER DEFAULT") is and at all times herein mentioned was, a corporation, association, partnership, joint venture, and/or sole proprietorship organized and existing under the laws of the State of California and/or maintaining offices in Jacksonville, Florida.

18.    At all times herein mentioned, Plaintiff is informed and believes and thereon alleges that Defendant **MORTGAGE ELECTRONIC RESITRATION SYSTEMS and its assignees and/or successors**, (hereinafter referred to as "MERS") is and at all times herein mentioned was, a corporation, association, partnership, joint venture, and/or sole proprietorship organized and existing under the laws of the State of California and/or maintaining offices in Delaware.

19.    All persons unknown, claiming any legal or equitable right, title estate, lien or interest in the property described in this Complaint adverse to Plaintiff's title thereto and as DOES 1 through 100 (hereinafter referred to as ("Unknown Defendants") are unknown to Plaintiff. These Unknown Defendants and each of them claim some right, title, estate, lien or interest in the Subject Property hereinafter described adverse to Plaintiff's title and their claims and each of them constitute a cloud on Plaintiff's title to the Subject Property. Plaintiff is informed and therefore believes, and on that basis alleges that each fictitiously named herein as a DOE is responsible for the events happening hereinafter alleged. Plaintiff will seek leave of the Court to amend this Complaint to allege the true names and capacities of said fictitiously named defendants when ascertained.

20.    Plaintiffs are informed and therefore believe and on that basis allege that at all times mentioned herein, the Unknown Defendants are individuals and/or business entities whose forms

are unknown and were agents, principals, employees, employers and co-conspirators of each and every other named or unnamed defendant in this Complaint Plaintiffs are informed and therefore believe and on that basis allege that each of said defendants is and at all relevant times herein, was acting within the scope and consent of the remaining named and unnamed defendants.

21.    Whenever in this Complaint an act or omission of a corporation or business entity is alleged, the allegation shall be deemed to mean and include an allegation that the corporation or business entity acted or omitted to act through its authorized officers, directors, agents, servants, and/or employees, acting within the course and scope of their duties, that the act or omission was authorized by corporate managerial officers or directors, and that the act or omission was ratified by the officers and directors of the corporation or business entity.

## SUMMARY

22.    On or about April 4, 2006, Plaintiffs obtained a home loan through the brokerage services of Santa Cruz Mortgage Company. In connection with said home loan, Plaintiffs executed a promissory Note in favor of Defendant AMERICAN BROKERS (the "Note") on Plaintiffs' above-mentioned Property. Under the express written terms of the *Deed of Trust*, Defendant MERS was listed as the beneficiary.

23.    In January 2009, Plaintiff Richard Chalgren became unable to work due to a physical disability and thereby suffered a loss of income.

24.    On February 1, 2009, Plaintiffs were unable to make their monthly payment on the Note. Although Plaintiffs had suffered a loss of income, they still had access to money and tried to ascertain who was the holder of the Note in order to discuss options to modify their loan to new terms which Plaintiffs would be able to afford, and Plaintiffs made numerous phone calls and wrote letters to the servicer of their loan, Defendant AMERICAN HOME, in order to request the

1
2
3
name, address and telephone number of the holder of the Note in order to be able to negotiate a loan modification.

4
5
6
25.     Plaintiffs also requested that name and address of any agent of the holder of the Note who was authorized to negotiate a loan modification with Plaintiffs.  This request for information and names went unanswered by Defendant AMERICAN HOME.

7
8
9
26.     To this day, despite repeated demand by Plaintiffs, Defendants and each of them have failed and refused to tell Plaintiffs who is the true Holder of the Note.

10
11
12
27.     On or about May 5, 2009, a *Notice of Default* to be recorded in the Official Records of the County of Santa Cruz by Defendants AMERICAN HOME, DEFAULT RESOLUTION, and FIDELITY, acting in concert.

13
14
15
28.     Said Notice of Default contained the following inaccuracy and misrepresentation:  It wrongfully misstated that Defendant DEFAULT RESOLUTION had contacted Plaintiffs as required by California Civil Code § 2923.5.

16
17
18
29.     On May 7, 2009, Plaintiffs filed bankruptcy under Chapter 7 of the United States Bankruptcy Code.

19
20
21
22
23
24
25
30.     On or about June 9, 2009 Defendant DEUTSCHE BANK appeared in the Bankruptcy proceeding and filed a Motion for Relief from the Automatic Stay in order to foreclose on the Subject Property.  DEUTSCHE BANK alleged that Plaintiffs' loan had been bundled into a loan pool referred to as "GSR MORTGAGE LOAN TRUST 2006-OA1" which had been securitized and sold to investors around the world.  DEUTSCHE BANK further alleged that it was the trustee of the said pool with the attendant right to foreclose the Plaintiffs' property.

26
27
28
31.     It was only after this hearing that an Assignment of Deed of Trust was recorded on July 6, 2009 purporting to assign all rights in the Deed of Trust from MERS to Defendant DEUTSCHE BANK.

7
Second Amended Adversary Complaint

32.    A *Substitution of Trustee* was executed and recorded which purported to substitute Defendant POWER DEFAULT as Trustee under the subject Deed of Trust. This instrument is dated June 9, 3009 (sic) and was signed by Cindi Ellis, Asst. Vice President of "American Home Mortgage Servicing, Inc. as successor for Deutsche Bank National Trust Company, not in its individual capacity but solely as trustee on behalf of GSR Mortgage Loan Trust 2006-OA1." The Substitution of Trustee is attached as **Exhibit "A"** and incorporated herein by reference.

33.    On June 30, 2009, an *Assignment of Deed of Trust* was executed in which Defendant MERS "as nominee for AMERICAN BROKERS CONDUIT" assigned to "Deutsche Bank National Trust Company, not in it individual capacity but solely as Trustee on Behalf of GSR Mortgage Loan Trust 2006-OA1" all rights under the Deed of Trust. This purported assignment was produced by Defendant DOCX. **Kolrell Harp** signed this document on June 30, 2009 as Vice President of MERS. This document was recorded on July 7, 2009. The Assignment of Deed of Trust attached as **Exhibit "B"** and incorporated herein by reference.

34.    As will be shown below, this Assignment of Deed of Trust was fraudulently drafted and executed, and thus it is void.

35.    Plaintiffs are informed and believe and thereon allege that the subject Note was bundled into a pool of home mortgages which were collectively securitized and sold in the form of bonds to investors around the world.

36.    On September 4, 2009, Defendants FIDELITY, AMERICAN HOME, and POWER DEFAULT violated the Automatic Stay of the bankruptcy proceeding and recorded the Notice of Trustee Sale.

**ARGUMENT**

**A. The assignment of the Deed of Trust, the Substitution of Trustees, and the Notice of Default are all VOID.**

37.   The <u>Notice of Default</u> which was recorded on May 5, 2009 contains the following defects:

- It wrongfully identified Defendant AMERICAN BROKERS as the beneficiary of the DOT. The Deed of Trust identified Defendant MERS was the Beneficiary under the Deed of Trust, not AMERICAN BROKERS.

- From the date that the Assignment of Deed of Trust was signed and notarized, June 30, 2009, it is clear that Defendant DBNTC had not acquired the Plaintiffs" mortgage at the time that the foreclosure action was initiated.

- It wrongfully misstated that Defendant DEFAULT RESOLUTION had contacted Plaintiffs as required by California Civil Code § 2923.5. DEFAULT RESOLUTION had no legal interest under the Deed of Trust.

38.   The <u>Assignment of Deed of Trust</u> of June 30, 2009 (Exhibit "B") contains the following flaws which render this document void:

- The Deed of Trust was purportedly assigned to "Deutsche Bank National Trust Company, not in it individual capacity but solely as Trustee on Behalf of GSR Mortgage Loan Trust 2006-OA1." However, Plaintiffs are informed and believe that this Trust closed in 2006, yet it acquired this loan by assignment in 2009, about three years after this Trust closed. Such acquisition of such loan is prohibited after the closing date of the Trust.

- At the time of the Assignment, AMERICAN BROKERS was in a bankruptcy proceeding under Chapter 11 of the U.S. Bankruptcy Code. Plaintiffs are informed and believe that the Bankruptcy Court did not authorize or approve the assignment of the Deed of Trust by debtor AMERICAN BROKERS to DEUTSCHE BANK as Trustee.

9

Second Amended Adversary Complaint

- Korell Harp signed this document as an officer of MERS. However, Korell Harp was actually employed by Defendant LENDER PROCESSING when he signed this assignment.

- Plaintiffs have discovered many other documents which are purported to be signed by Korell Harp, using many different job titles for many different companies. Thus this document is presumed to be the product of fraud. Some examples of these documents are presented in **"Exhibit C."**

- In addition, the signatures themselves, while signing the name "Korell Harp," take many different forms. A cursory examination of these documents reveals that several different people are fraudulently signing the name "Korell Harp" and attempting to pass these documents as genuine. Some examples of these signatures are presented in **"Exhibit D."**

- MERS has no substantive rights itself and, therefore, cannot assign what it does not have.

39.    Here, the loan originator, AMERICAN BROKERS, should have delivered a signed and dated Assignment to the depositor of the Trust, who in turn should have delivered the assignment to the securities company/sponsor, who in turn should have delivered the Assignments to the Document Custodian of the Trust.

40.    The dates on the Assignments are almost certainly incorrect. According to the Assignment of Deed of Trust, a Trust that closed in 2006 acquired this non-performing loan by an assignment dated in 2009.

41.    Although Korell Harp signs as an officer of MERS as nominee for AMERICAN BROKERS, he was actually employed by LENDER PROCESSING when he signed this Assignment. Korell Harp of LENDER PROCESSING appears to be fraudulently signing on behalf of the GRANTOR while actually working on behalf of the GRANTEE Bank/Trustee.

42.     Plaintiffs believe and hereby allege that any transfers performed by Korell Harp, as an officer of any company, were invalid, as she/he was a duly appointed "ROBO-SIGNER" for Defendant LENDER PROCESSING and/or Defendant DOCX, and held no actual authority to convey property for any company. This was an illegal attempt by his/her employer to delegate duties, reserved by statute, for officers of the company.

43.     JOB TITLES HELD BY "KORELL HARP." The signatures take several different forms:

- 03-13-2009 Vice President, American Home Mortgage Servicing, Inc. as successor-in-interest to Option One Mortgage Corporation 04-09-2009 Vice President, American Brokers Conduit
- 04-15-2009 Vice President & Asst. Secretary, Argent Mortgage Company, LLC by Citi Residential Lending, Inc., as Attorney in Fact
- 04-23-2009 Vice President, American Home Mortgage Servicing, Inc. as successor-in-interest to Option One Mortgage Corporation
- 04-29-2009 Vice President, Mortgage Electronic Registration Systems, Inc., as nominee for American Home Mortgage Acceptance, Inc. 04-30-2009 Vice President, American Home Mortgage Servicing, Inc. as successor-in-interest to Option One Mortgage Corporation
- 05-06-2009 Vice President & Asst. Secretary, Argent Mortgage Company, LLC by Citi Residential Lending, Inc., as Attorney in Fact
- 05-13-2009 Vice President, American Home Mortgage Servicing, Inc. as successor-in-interest to Option One Mortgage Corporation 05-14-2009 Vice President, American Home Mortgage Acceptance, Inc.
- 05-14-2009 Vice President, Mortgage Electronic Registration Systems, Inc., as nominee for American Home Mortgage Acceptance, Inc. 05-26-2009 & 06-01-2009 Authorized Signer, USAA Federal Savings Bank
- 06-14-2009, 06-16-2009 Vice President, Mortgage Electronic Registration Systems, Inc., as nominee for American Home Mortgage Acceptance, Inc. 06-19-2009 Authorized Signer, USAA Federal Savings Bank
- 07-20-2009 Vice President, Mortgage Electronic Registration Systems, Inc., acting solely as nominee for American Home Mortgage
- 07-27-2009 Vice President, American Home Mortgage Servicing, Inc. as successor-in-interest to Option One Mortgage Corporation

44.     Defendant LENDER PROCESSING, of which Defendant DOCX is a subsidiary, has admitted that there were faults in the documents produced by the DOCX office and on information and belief there was widespread document fraud. On information and belief it is alleged that this purported assignment was made at a time when the Trust (GSR Mortgage Loan

Trust 2006-OA1) was closed and that this was an ineffective assignment covering up for the fact that no assignment was originally made before the Trust was closed.

45. The Assignment was prepared by Docx, LLC in Alpharetta, GA, the document mill made famous by Fraud Digest, then by 60 Minutes, Reuters, The Washington Post, the New York Times, Huffington Post, Firedoglake, Naked Capitalism, Foreclosure Hamlet, 4closure Fraud, Stop Foreclosure Fraud, the Wall Street Journal, and many others. While Docx is now closed, its documents live on in courts and recorders offices across the country.

46. Furthermore, recording a false document is a crime under California Law. California Penal Code § 115 states in pertinent part:

> (a) Every person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States, is guilty of a felony.

> (b) Each instrument which is procured or offered to be filed, registered, or recorded in violation of subdivision (a) shall constitute a separate violation of this section.

47. Plaintiffs allege that the Defendants, and each of them, willfully, wrongfully and without justification, and without privilege, are in anticipation of conducting an invalid foreclosure sale against the Plaintiffs' property, as soon as possible, thereby slandering Plaintiffs' title thereto.

48. To Plaintiffs' information, knowledge and belief, neither the Trustee nor the servicing company for the Trust could locate the actual Assignment that was supposed to have been obtained from AMERICAN BROKERS in 2006. Neither the Trustee nor the servicer could go back to AMERICAN BROKERS to get a properly executed assignment because AMERICAN BROKERS had filed for bankruptcy and the trust did not want to risk this loan and mortgage being considered part of the bankruptcy estate. LENDER PROCESSING was hired and directed

1
2  to produce a fraudulent "replacement" assignment that contained false information about the date
3  the mortgage was acquired by the trust.

4  49.    Demand has been made by Plaintiffs against Defendant DEUTSCHE BANK for evidence
5  that AMERICAN BROKERS had bankruptcy court approval to make this assignment but
6  DEUTSCHE BANK as Trustee has failed to come up with any such evidence.

7  50.    Instead, DEUTSCHE BANK has claimed that they have physical possession of the Note
8
   and Deed of Trust which gives them authority to enforce the Note.  However, physical transfer of
9
   the Note and Deed of Trust from AMERICAN BROKERS during the time that AMERICAN
10
11 BROKERS was a debtor in bankruptcy proceedings and without court authority to make such a
12 transfer is an ineffective as formal assignment of a note and deed of trust without bankruptcy
13 court approval.

14 51.    For all of these reasons, this Assignment of Deed of Trust which supposedly transferred
15 the Plaintiffs' mortgage to DBNTC is fraudulent
16
17 52.    The Defendants have acted fraudulently in drafting and executing instruments.  These
18 fraudulent acts have the effect to render the entire instrument void.  "Numerous authorities have
19 established the rule that an instrument wholly void, such as an undelivered deed, a forged
20 instrument, or a deed in blank, cannot be made the foundation of a good title, even under the
21 equitable doctrine of bona fide purchase."  _Trout v. Taylor_ (1934), 220 Cal. 652, 656 .

22 53.    In addition, as nominee for the lender, MERS serves in a very limited capacity.
23 Specifically, MERS records the mortgage (Deed of Trust) and tracks ownership of the lien.
24
   MERS never held the Note. Any transfer of the beneficial interest of a trust deed without
25
26 ownership of the underlying note is void under California law.

27 54.    MERS has no substantive rights itself and, therefore, cannot assign what it does not have.
28 "A nominee of the owner of the Note and mortgage may not effectively assign the Note and

mortgage to another for want of an ownership interest in said Note and mortgage by the nominee." *LaSalle Bank Nat. Ass'n v. Lamy, 824 N.Y. S.2d 769.*

55.    The United States Bankruptcy Court for the Eastern District of California has issued a ruling dated May 20, 2010 in the matter of *In Re: Walker, Case No. 10-21656-E-11* which found that "MERS could not, as a matter of law, have transferred the note to Citibank from the original lender, Bayrock Mortgage Corp. The Court's opinion is headlined stating that MERS and Citibank are not the real parties in interest."

56.    Furthermore, Defendant MERS has no legal standing in the State of California per the records of the Secretary of State.

57.    The <u>Substitution of Trustee</u> (Exhibit "A") contains the following flaws which render this document invalid:

•    This document was signed by an Asst. Vice President of "American Home Mortgage Servicing, Inc. as successor for Deutsche Bank National Trust Company, not in its individual capacity but solely as trustee on behalf of GSR Mortgage Loan Trust 2006-OA1." However, this Trust ceased to exist three years previous.

•    There is no valid recorded document which gives Defendant AMERICAN HOME the power to act as Trustee on the Deed of Trust.

58.    On July 17, 2009, Plaintiffs sent demand letters via certified mail to Defendants pursuant to the Federal Real Estate Settlement Procedures Act (12 USC §§ 2601-2617) wherein Plaintiffs requested that Defendants identify the Holder of the Note or the authorized agent of the Holder of the Note who had authority to discuss modification of Plaintiff's loan. Although Defendants had a statutory obligation to respond to said letters, each and every one of them failed and refused to respond at all and continue to fail and refuse to respond to said letters.

59. As a proximate result of Defendants' concealment of the true beneficiary and holder in due course of Then Note, Plaintiffs are now in the situation where they are unable to communicate with anyone with authority to modify their loan. Without an opportunity to negotiate in good faith to modify their loan as is mandated by State and Federal laws, Plaintiffs stand to lose their home of fifteen years. Plaintiffs have been at all times material hereto qualified and willing to enter into a modification of their loan within acceptable guidelines which they would be able to afford.

60. On May 7, 2009, Plaintiffs filed a bankruptcy under Chapter 7 of the United States Bankruptcy Code.

61. On or about June 9, 2009, Defendant DEUTSCHE BANK appeared in the Bankruptcy proceeding and filed a Motion for relief from the automatic stay in order to foreclose on Plaintiffs Property. Pursuant to document filed therein, DEUTSCHE BANK alleged that Plaintiffs' loan had been bundled into a loan pool referred to as "GSR MORTGAGE LOAN TRUST 2006-OA1" which had been securitized and sold to investors around the world. DEUTSCHE BANK further expressly or impliedly alleged that it was the trustee of said loan pool with the attendant right to foreclose to Plaintiffs' Property.

62. It was only after the hearing of DEUTSCHE BANK's motion which occurred on June 29, 2009, that an instrument was recorded (on July 6, 2009) in the Official Records of the County of Santa Cruz purporting to be an Assignment of the Deed of Trust from Defendant MERS to Defendant DEUTSCHE BANK.

63. On August 13, 2009, Plaintiffs filed the present bankruptcy under Chapter 13 of the Untied Stated Bankruptcy code.

64.     On September 4, 2009, Defendants FIDELITY, AHMSI and POWER DEFAULT, acting in concert, violated the automatic stay of the new bankruptcy proceeding and caused to be recorded in the Official Records of the County of Santa Cruz a <u>Notice of Trustee's Sale</u>.

**B. Any attempt to transfer the beneficial interest of a Trust Deed without ownership of the underlying note is void under California Law.**

65.     The promissory note was originally made payable to Defendant AMERICAN BROKERS. Traditionally, when a loan was executed, the beneficiary of the loan on the Deed of Trust was the lender. Once the loan was funded, the Deed of Trust and the Note would be recorded with the local County Recorder's office. The public recording of the Deed and the Note created a Public Record of the transaction. All future Assignments of the Notes and Deed of Trust were expected to be recorded as ownership changes occurred.

66.     We currently live under a split title system where the Deed/Mortgage is filed on the county level as a lien representing legal title and the Note is held by the owner/investor/Note Holder as representation of equitable title. Together the Deed and Note (Legal and Equitable title) represent a perfect title or "Fee Simple" title.

67.     Here it appears that the Note and Deed have taken two distinctly different paths. The NOTE was securitized into the GSR Mortgage Loan Trust 2006-OA1. The TRUST was formed by the execution of a trust agreement referred to in the finance and securitization industry as a "Pooling and Servicing Agreement" ("PSA") or in the case of this transaction the "TRUST AGREEMENT". As a result of the split title system the Note and the Deed have been separated.

68.     The TRUST was created on or about April 1, 2006. The TRUST by its terms set a "CLOSING DATE" of on or about April 24, 2006. The promissory note in this case became trust property in compliance with the requirement set forth in the TRUST AGREEMENT. Any assignment after the Trust closing date of April 24, 2006 would be a void act because it would violate the express terms of the Trust instrument.

69.     The loan was originally made by Defendant AMERICAN BROKERS and was sold and transferred to the GSR Mortgage Loan Trust 2006-OA1.  There is no record of Assignments to either the Sponsor or Depositor as required by the PSA.  "Where the mortgagee has "transferred" only the mortgage, the transaction is a nullity and his "assignee" having received no interest in the underlying debt or obligation, has a worthless piece of paper (4 Richard R. Powell), Powell on Real Property, § 37.27 [2] (2000)

70.     To further address this point, the provisions of the TRUST AGREEMENT clearly stipulate procedures and requirements for Assignments to be obtained for each individual Mortgage Loan pooled into the Trust.  The responsible parties named in the Trust and Pooling and Servicing Agreements clearly have not fulfilled their fiduciary responsibilities to both the Homeowners, and the Certificate holders of the Trust.

71.     A promissory note is personal property and the deed of trust securing a note is a mere incident of the debt it secures, with no separable ascertainable market value.  California Civil Code §§ 657, 663.  Kirby v. Palos Verdes Escrow Co., 183 Cal. App. 3d 57, 62.

72.     With respect to principal and agent relations and the Statute of Frauds, Civil Code § 2309 provides that an oral authorization is sufficient for any purpose, except that an authority to enter into a contract required by law to be in writing can only be given an instrument in writing.

73.     Plaintiff acknowledges recent case law holding that a foreclosing entity need not hold the Note in order to initiate non-judicial foreclosure (enabling an agent or nominal beneficiary of the Note holder to initiate non-judicial foreclosure.)  "Under California Civil Code § 2924 et seq., possessing the note is irrelevant to nonjudicial foreclosures."  Marty v. Wells Fargo Bank, 2011 U.S. Dist. LEXIS 29686.

74.     Plaintiff also acknowledges a long history of decisions requiring possession of a note in order to validate a claim.  "The note and the mortgage are inseparable; the former as essential,

the later as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." Carpenter v. Longan, 83 U.S. 271, 274, 21 (1872). Therefore, if one party receives the note and another receives the deed of trust, the holder of the note prevails regardless of the order in which the interests were transferred. Adler v. Sargent, 109 Cal. 42, 49-50 (1895). In re Walker, 2010 Bankr. LEXIS 3781 (Bankr. E.D. Cal. May 2010).

75.     Plaintiffs allege that if Defendant AMERICAN BROKERS was the true Lender who at one time held the Note, AMERICAN BROKERS later transferred or sold the Note into a pool of CDOs and is therefore, no longer the holder of the Note.  Because Defendant AMERICAN BROKERS has transferred, sold, or never held the Note, the interest in the Note became separated from the mortgage and the powers granted to any of the Defendants through the original DOT have been terminated.

76.     Absent a writing from the holder of the Note granting Defendant AMERICAN BROKERS, or AMERICAN BROKERS's successors, designees or assignees herein named as Defendants, evidencing that Defendants are acting on behalf of the successor holder of the Note, any assignment of the right to foreclose by Defendants that originated from AMERICAN BROKERS or the DOT is also void because that authority was not subsequently granted by the Note holder in a written instrument.

77.     Here, neither AHMSI nor DEUTSCHE BANK was the initial payee of the Note. Due to this fact, each was required to demonstrate facts sufficient to establish its respective standing. None of these assignments were authenticated.   "[V]alid foreclosure under California law requires both that the foreclosing party be entitled to 'payment of the secured debt' and that its status as foreclosing beneficiary appear before the sale in the public record title for the property." In re Salazar, 2011 WL 1398478 at *4 (Bankr. S.D. Cal. 2011).

78.    There is also a failure of proof to show the connection of the purported owner and holder of the Note, DEUTSCHE BANK, as Trustee, to ownership of the Note.

79.    Because it did not show that it or its agent had actual possession of the Note, DEUTSCHE BANK could not establish that it was a holder of the Note, or a "person entitled to enforce" the Note. Further, even if admissible, the final purported assignment of the Mortgage was insufficient under Article 9 to support a conclusion that DEUTSCHE BANK holds any interest, ownership or otherwise, in the Note. See *In re Veal*, 2011 Bankr. LEXIS 2359 *at p. 30* (Bankr. Ninth Cir 2010).

80.    The Note itself does not have endorsements to satisfy the requirements of the PSA (i.e., from AMERICAN BROKERS to the sponsor, and from the sponsor to the depositor, and the depositor to DEUTSCHE BANK, as Trustee). The PSA requires an unbroken chain of endorsements to be set forth on the Note, but they are absent.

81.    The fact that AHMSI resorted to a known robo-signer to record an assignment of the deed of trust from MERS to AHMSI shows that AHMSI has been involved with unscrupulous behavior in the past not reflecting well on the trustworthiness of a declaration as to ownership of a Note.

82.    Absent a grant of authority to Defendants, in a separate written instrument from the holder of the Note, the NOD and the NOS are void.

### FIRST CAUSE OF ACTION
**Fraud and Fraud in the Inducement**
**(Against all Defendants and each of them)**

83.    Plaintiffs incorporate by reference each allegation contained in paragraphs 1 through 82 of this Adversary Complaint as though fully set forth herein.

84.    California Civil Code §1572 provides that, "[A]ctual fraud consists of any of the following acts, committed by or with the connivance of a party to a contract with the intent to

deceive another party to the contract, or to induce the other party to enter into the contract:
1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
2. The positive assertion, in any manner not warranted by the information of the person making it, of that which is not true, though the person making the assertion believes it to be true; 3. The suppression of that which is true, by one having knowledge or belief of the fact; 4. A promise made without any intention of performing it; and 5. Any other act fitted to deceive."

85.    Plaintiffs allege intentional misrepresentation, fraud and deceit by Defendants with facts to prove the following: 1) Misrepresentation; 2) Scienter; 3) An intent to induce Plaintiffs' reliance on the misrepresentation; 4) Causation; 5) Justifiable reliance on the misrepresentations by Plaintiffs; and 6) Damages.

86.    As alleged herein, the Defendants, and each of them, at all times mentioned herein, made false representations regarding material facts to Plaintiffs; they drafted, executed, and recorded false documents; and they falsely concealed known facts, including, but not limited to:

- the Assignment of Deed of Trust was fraudulently drafted and executed;

- the Deed of Trust was assigned to a Trust which ceased to exist three years previous;

- Korell Harp signed the Assignment of Deed of Trust as an officer of MERS, yet Korell Harp did not work for MERS;

- Korell Harp has signed many documents and his signatures take several forms, indicating that many if not all of these documents are the product of fraud;

- Korell Harp of LENDER PROCESSING appeared to be signing on behalf of the GRANTOR while actually working on behalf of the GRANTEE Bank/Trustee;

- Defendants violated the automatic stay of the new bankruptcy proceeding and executed a Notice of Trustee's Sale.

87. The Bankruptcy Court did not authorize or approve the assignment of the Deed of Trust by debtor AMERICAN BROKERS to DEUTSCHE BANK as Trustee, yet these Defendant recorded a Notice of Default and Election to Sell.

88. Defendants knowingly and intentionally concealed material information from Plaintiffs which is required by federal and state statutes and regulations to be disclosed to the Plaintiffs both before and after closing. Defendants also materially misrepresented material information to the Plaintiffs with full knowledge of Defendants at their affirmative representations were false, fraudulent, and misrepresented the truth at the time said representations were made.

89. Furthermore, all named Defendants knew that these material misrepresentations were false when made or that they were made with reckless disregard for the truth.

90. Plaintiffs did not know that Defendants' representations were false, and believed and trusted them to be true. Plaintiffs reasonably relied on said representations. In reliance upon Defendants' misrepresentations, Plaintiffs are facing onerous foreclosure proceeding, have entered bankruptcy, hired attorneys to defend against this wrongful foreclosure, and have suffered emotional distress. As a result, Defendants have placed the Plaintiffs' home in a non-judicial foreclosure and Plaintiffs continue to suffer substantial damages.

91. In addition, the Defendants have feloniously offered and recorded these instruments in violation of California Penal Code § 115.

92. Defendants are attempting to benefit from their fraudulent acts by taking the Subject Property for their own profit from the Plaintiffs.

93. Because the Assignment of Deed of Trust which supposedly transferred the Plaintiffs' mortgage to DBNTC is the product of fraud and thus void, DBNTC and all of the other named defendants lack standing to foreclose or otherwise assert any interest in the Subject Property.

94.     As a result of Plaintiffs' reliance on Defendants and each of them, who aided and substantially assisted in carrying out the above-described scheme to defraud Plaintiffs, Plaintiffs were harmed and suffered damages in an amount to be determined later.  Furthermore, Plaintiffs' reliance on Defendants, the above misrepresentation and the scheme to defraud Plaintiffs were a substantial factor in causing Plaintiffs harm.

95.     When Defendants made the false representations, they acted with oppression, fraud and malice, as described in <u>California Civil Code §3294</u>.  Furthermore, all of the above-named Defendants' actions were malicious and willful, in conscious disregard for the rights and safety of Plaintiffs and these actions were calculated to injure Plaintiffs.  As such, Plaintiffs are entitled to punitive damages in a sum to be determined later, to punish all of the above-named Defendants and to deter them from engaging in conducts of this kind in the future.

**SECOND CAUSE OF ACTION**
**Fraud--Constructive**
**(Against all Defendants and each of them)**

96.     Plaintiffs incorporate by reference each allegation contained in paragraphs 1 through 95 of this Adversary Complaint as though fully set forth herein.

97.     <u>California Civil Code §1573</u> provides, in pertinent part, constructive fraud consists of "any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or anyone claiming under him, by misleading another to his prejudice, or to the prejudice of anyone claiming under him."

98.     Defendants, when they made the false representations concerning the Subject Loan to Plaintiffs mentioned above, had no reasonable grounds for believing that these representations were true, and the Defendants intended that these representations induce Plaintiff to take the actions herein alleged, and with the intent to act in reliance on the agreement.

99.     As a result of the fraudulent conduct as herein alleged, Plaintiffs were duped and may suffer an onerous foreclosure proceeding and a trustee sale of their home, and are now subject to the possibility of the loss of their home. Plaintiffs have suffered and will continue to suffer damages, the exact amount of which has not been fully ascertained but is within the jurisdiction of this Court. Plaintiffs are entitled to incidental and consequential expenses and damages in an amount to be shown at the time of trial. In addition, Plaintiffs have been forced to retain a law firm to enforce their rights, and have incurred and will incur costs and reasonable attorneys' fees in connection herewith, recovery of which Plaintiffs are entitled to according to proof.

WHEREFORE, Plaintiffs pray for judgment against Defendant as hereinafter set forth.

### THIRD CAUSE OF ACTION
**Negligent Misrepresentation**
**(Against All Defendants and each of them)**

100.     Plaintiffs incorporate by reference each allegation contained in paragraphs 1 through 99 of this Adversary Complaint as though fully set forth herein.

101.     Defendants DEUTSCHE BANK, DBNTC, AMERICAN BROKERS, AMERICAN HOME, DOCX, FIDELITY, LENDER PROCESSING, DEFAULT RESOLUTION, POWER DEFAULT, and MERS, and each of them, owed duties of care and honesty to the Plaintiffs to comply with the transfers, substitutions and assignments of legal interests in the Subject Property and provide Plaintiffs with professionally competent real estate services, to exercise the applicable standard of care, and to comply with all applicable rules of professional conduct.

102.     In making the representations, or in the alternative, failing to disclose information, and in doing the things alleged above, these Defendants acted without any reasonable grounds for believing the representations were true and intended by such representations to induce Plaintiff's reliance and eventual purchase of the Subject Property.

103.    Plaintiffs fully performed their obligations to the named Defendants, and each of them to sign all of the real estate and loan documents, and at all times, they completely relied on these Defendants to use their honesty, competence and skill in providing such services.

104.    The Defendants undertook, *inter alia,* the duty to provide Plaintiffs with accurate recording, transferring, assigning of legal documents; to exercise the applicable standard of care and honesty, and to comply with all applicable customs and professional conduct.

105.    In making the representations, or in the alternative, failing to disclose information, and in doing the things alleged above, all Defendants, and each of them, acted without any reasonable grounds for believing the representations were true and intended by such failures to disclose for Plaintiff caused plaintiff to rely on incorrect or inaccurate recording, transferring, assigning of legal documents.

106.    These Defendants, and each of them, disregarded their obligations by negligently, carelessly and recklessly representing information that they knew to be false and incorrect, falling well beneath the standard of care required and commonly exercised by lending professionals; thus breaching their duty to Plaintiffs.

107.    That as a further proximate result of the aforesaid conduct by all Defendants, and each of them, the Plaintiffs' economic position as it relates to the aforementioned Subject Property is now severely damaged; and Plaintiffs are, thereafter, denied full use of the Property, to Plaintiffs' further damage; all in amounts which will be shown according to proof.

## FOURTH CAUSE OF ACTION
### Wrongful Foreclosure
### (Against All Defendants and each of them)

108.    Plaintiffs incorporate by reference each allegation contained in paragraphs 1 through 105 of this Adversary Complaint as though fully set forth herein.

109.   California Civil Code §2924 mandates that a non-judicial trustee's sale "SHALL NOT TAKE PLACE" unless it is done on behalf of the beneficiary of a deed of trust securing a note and certain technical procedures are met.

110.   Plaintiff's property contains *no valid Substitution of Trustee* giving Defendants FIDELITY, AHMSI or POWER DEFAULT the power to conduct a nonjudicial foreclosure. Therefore there is no valid Notice of Default.   At the time that the Notice of Default was executed, Defendant DBNTC had not acquired any rights under the Plaintiffs" mortgage.

111.   In addition, the Notice of Default was filed in violation of the Automatic Stay of the existing bankruptcy proceedings.

112.   California Civil Code §2924b(4), states in pertinent part:

   A "person authorized to record the notice of default or the notice of sale" shall include an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee.

The law clearly states that a Substitution of Trustee shall be recorded prior to a Notice of Default.

113.   The Notice of Default wrongfully misstated that Defendant DEFAULT RESOLUTION had contacted Plaintiffs as required by California Civil Code §2923.5.

114.   Because the Assignment of Deed of Trust which supposedly transferred the Plaintiffs' mortgage to DBNTC is the product of fraud and thus void, DBNTC and all of the other named defendants lack standing to foreclose or otherwise assert any interest in the Subject Property.

115.   Defendant MERS has no legal standing in the State of California per the records of the Secretary of State.   Further, any and all executions in the name of MERS by supposed "Asst. Secretaries" and "Vice Presidents", provide cause for further discovery of the individual's executing documents in the chain of title on behalf of MERS.

116. In addition, MERS has no substantive rights itself and, therefore, cannot assign what it does not have.

117. Defendant DBNTC has not been given any rights to collect payments from Plaintiff by any other named lender or beneficiary.

118. Plaintiffs further allege that the foreclosure sale of the Subject Property was not executed in accordance with the requirements of California Civil Code §2923.5, §2924, §2932.5 and Commercial Code § 3302 et seq.

119. Plaintiffs demonstrated that they were both able and willing to cure their delinquency and repeatedly attempted to contact Defendant AMERICAN HOME in order to avoid further finance charges and foreclosure.

120. Plaintiffs relied to their detriment on the statements made by Defendants which could lead to wrongful foreclosure and the risk that they will lose their home and effectively eliminate their ability to modify, rewrite, refinance or even sell their home.

121. Defendants knew or should have known that Plaintiffs would rely on the statements made at the time they were made.

122. Defendants either intentionally or with reckless disregard, made the statements alleged herein with the intent that Plaintiffs rely upon them.

123. In their reliance on the Defendant's misrepresentations, Plaintiffs have suffered general and special damages in an amount to be proven at trial.

124. As a result of the negligence or reckless conduct of all Defendants, Plaintiffs' credit has been impaired and their home may be sold despite the fact that they made consistent efforts to modify the loan or settle the dispute so that she could continue payments and keep their home.

Second Amended Adversary Complaint

125.   As a proximate result of the negligent, willful and/or reckless actions of these Defendants, Plaintiffs have suffered consequential damages and will continue to suffer additional damages in an amount to be fully determined at the time of trial.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as set forth herein.

**FIFTH CAUSE OF ACTION**
**Fraudulent Concealment of the Identity of the Holder of the Note**
**and the Beneficiary of the Deed of Trust**
**(Against All Defendants and each of them)**

126.   Plaintiffs incorporate by reference each allegation contained in paragraphs 1 through 125 of this Adversary Complaint as though fully set forth herein.

127.   At the time that Plaintiffs obtained said new loan, it was their understanding that Defendant AMERICAN BROKERS, as the purported lender of the money for the loan, was the beneficiary of the Deed of Trust. However, Defendants fraudulently concealed from Plaintiffs the true identity of the Beneficiary of the Deed that they executed. The Defendants hid the true identity of the beneficiary behind a straw man, Defendant MERS. To this day, despite repeated demand by Plaintiffs, Defendants and each of them have failed and refused to tell Plaintiffs who the true beneficiary of the deed of Trust is. Furthermore, Plaintiffs are informed and believe that at the inception of the loan Defendants had the wrongful intention to sell and assign the Note to third parties whose identities were to be forever concealed from Plaintiffs.

128.   Had Plaintiffs understood that their loan would be sold or assigned to unknown third parties and would have an undisclosed principal whose identity would never be revealed to them, Plaintiffs would never have agreed to the loan or accepted any of the terms thereof.

129.   On July 17, 2009, Plaintiffs sent demand letters via certified mail to Defendants pursuant to California Civil Code § 2943 and the Federal Real Estate Settlement Procedures Act 12 U.S.C. §§ 2601-2617 wherein Plaintiffs requested that Defendants identify the holder of the Note or the

27

authorized Agent for the Holder of the Note in order to discuss a loan modification. Defendants violated the statutes and did not respond to these letters.

130. As a proximate result of Defendants' concealment of the true beneficiary and holder of the Note Plaintiffs are now in the situation where they are unable to communicate with anyone with authority to modify their loan. Without an opportunity to negotiate in good faith to modify their loan, Plaintiffs stand to lose their home of fifteen years. Plaintiffs have been at all times material hereto qualified and willing to enter into a modification of their loan within acceptable guidelines which they would be able to afford.

131. Defendants intentionally concealed the true identity of the beneficiary of the Deed of Trust with the intent to induce Plaintiffs to enter into the loan. Defendants further have intentionally concealed the identity of the holder of the Note with the despicable intent to avoid having to modify the loan and with the evil intent to foreclose on Plaintiffs' home of more than fifteen years.

132. Had Plaintiffs understood that their loan would have an undisclosed principal whose identity would never be revealed to them, Plaintiffs would never have agreed to the loan or accepted the terms thereof.

133. As a proximate result of Defendants' concealment of the identity of the holder of the Note and the Beneficiary of the Deed of Trust, Plaintiffs have suffered emotional distress and anguish in that they are unable to find anyone with authority to work with them and give them answers about their loan, and Plaintiffs are now subject the possibility of the loss of their home. Plaintiffs have suffered and will continue to suffer damages, the exact amount of which has not been fully ascertained but is within the jurisdiction of this Court. Plaintiffs are entitled to incidental and consequential expenses and damages in an amount to be shown at the time of trial. In addition, Plaintiffs have been forced to retain a law firm to enforce their rights, and have incurred and will

incur costs and reasonable attorneys' fees in connection herewith, recovery of which Plaintiffs are entitled to according to proof.

WHEREFORE, Plaintiffs request relief as hereinafter set forth.

## SIXTH CAUSE OF ACTION
### Violation of Automatic Stay - 11 U.S.C. §362(k)
### (against Defendants Fidelity National Title Company and AHMSI)

134.    Plaintiffs incorporate by reference each allegation contained in paragraphs 1 through 133 of this Adversary Complaint as though fully set forth herein.

135.    After Plaintiffs filed a bankruptcy under Chapter 13 of the United States Bankruptcy Code on August 13, 2009, Defendants FIDELITY and AHMSI, acting in concert, willfully violated the Automatic Stay of the debtor's bankruptcy proceeding and caused to be recorded in the Official Records of the County of Santa Cruz a Notice of Trustee's Sale without prior permission of the bankruptcy court.

136.    The recording of this Notice of Sale in violation of the automatic stay proximately caused Plaintiffs to incur costs in connection herewith, recovery of which Plaintiffs are entitled to according to proof.

## SEVENTH CAUSE OF ACTION
### Tortious Recordation of Forged Instruments
### (Against All Defendants and Each of Them)

137.    Plaintiffs incorporate by reference each allegation contained in paragraphs 1 through 136 of this Adversary Complaint as though fully set forth herein.

138.    Plaintiffs are informed and believe that defendants are acting in concert in a despicable unlawful scheme to sell Plaintiffs' home through a trustee's sale in blatant disregard of the law and without any right, title or interest that would legally entitle them to conduct such a sale.

139.    In furtherance of their wrongful and outrageous scheme to unlawfully conduct a trustee's sale of Plaintiffs' home, and as herein previously mentioned, these Defendants have:

- Executed and recorded and published the Notice of Default without the knowledge or authority of the legitimate holder of the Note;

- Executed, recorded and published said Notice of Default without first contacting Plaintiffs to explore options to modify the loan and thereby avoid foreclosure as required by California Civil Code § 2923, et seq., and in support of this action the Defendants fraudulently misrepresented in said Notice of Default that they had contacted or attempted to contact Plaintiffs;

- Executed and recorded an assignment of the Deed of Trust with forged signatures and without the knowledge or authority of the true holder of the Note;

- Executed and recorded a Notice of Trustee's Sale with forged signatures and without the knowledge or authority of the true holder of the Note;

- Executed and recorded a fraudulent and forged Substitution of Trustee of the Deed of Trust.

140. As a proximate result of Defendants' despicable conduct, Plaintiffs are now subject the possibility of the loss of their home. Plaintiffs have suffered and will continue to suffer damages, the exact amount of which has not been fully ascertained but is within the jurisdiction of this Court. Plaintiffs are entitled to incidental and consequential expenses and damages in an amount to be shown at the time of trial. In addition, Plaintiffs have been forced to retain a law firm to enforce their rights, and have incurred and will incur costs and reasonable attorneys' fees in connection herewith, recovery of which Plaintiffs are entitled to according to proof.

**EIGHTH CAUSE OF ACTION**
**Declaratory Relief**
**(Against All Defendants and each of them)**

141. Plaintiffs incorporate by reference each allegation contained in paragraphs 1 through 140 of this Adversary Complaint as though fully set forth herein.

142. An actual controversy exists between Plaintiffs and Defendants concerning their respective rights and duties regarding the Note and the Deed of Trust and the Trustee's Sale of their property in that Plaintiffs contend the following:

(A) The Deed of Trust is unenforceable because it was intentionally severed from the holder of the Note at the inception of the loan which rendered the Deed of Trust a nullity and of no force and effect; this further means that the Note is and was at all times an unsecured loan.

(B) The Notice of Default was illegal and void, since, as stated above, the subject Deed of Trust is invalid and therefore the subject loan was unsecured and there is no right whatsoever under California law to conduct a Trustee's Sale solely on the basis of an unsecured promissory Note;

(C) The Assignment of the subject Deed of Trust to DEUTSCHE BANK as Trustee was invalid and of no force or effect because 1) it was purportedly made when American Broker's Conduit was in Chapter 11 Bankruptcy and there was no authorization from the Bankruptcy Court, 2) it was made without authorization since the Trust had already been closed at the time it was made and it was made in an attempt to cover up the fact that the assignment had not been timely made, and 3) The Assignment was made through a fraudulently drafted and executed document.

(D) To the extent that DEUTSCHE BANK as Trustee claims they now have the original Note and Deed of Trust and that this gives them authority to enforce both, the transfer from AMERICAN BROKERS of the Note and Deed of Trust at a time when they were in Bankruptcy without Bankruptcy Court approval makes the physical transfer as ineffective as any written assignment.

(E) The Notice of Trustee's Sale is invalid and of no force or effect because the Notice of Trustee's Sale was published and recorded in violation of the automatic stay of this court.

143.    Plaintiffs are informed and believe and thereon allege that Defendants, and each of them, dispute the foregoing contentions concerning the Note, the Deed of Trust and the other documents referred to in the previous paragraph.

144.    Plaintiffs desire a judicial determination and declaration of all of the points set forth above in Paragraph 128.

**NINTH CAUSE OF ACTION**
**Injunctive Relief**
**(Against All Defendants and each of them)**

145.    Plaintiffs re-allege and incorporate by this reference the allegations of paragraphs 1 through 144 as though set forth in full at this point.

147.    If Defendants are not enjoined from proceeding with their unlawful Trustee's Sale, Plaintiffs are threatened with immediate, irreparable harm including a cloud upon the title to their property as well as the possibility of being wrongfully dispossessed of the property. If Defendants are not stopped from conducting the Trustee's Sale, Plaintiffs could lose their home and personal residence where they have resided for more than 15 years, a loss that Plaintiffs should not be permitted to suffer under the circumstances of this case.

148.    Any injury that Defendants might suffer by the court granting a temporary restraining order and permanent injunction against them would be substantially less than that which Plaintiffs would suffer by the loss of their home.

149.    Plaintiffs have no other adequate remedy at law and the injunctive relief requested in the prayer is necessary and appropriate at this time to prevent irreparable loss to Plaintiffs.

///

///

**TENTH CAUSE OF ACTION**
**Cancellation of Instruments**
**(Against All Defendants and each of them)**

150.    Plaintiffs incorporate by reference each allegation contained in paragraphs 1 through 149 of this Adversary Complaint as though fully set forth herein.

151.    As mentioned herein, the subject Deed of Trust was void *ab initio* by reason of the fact that it was intentionally separated from the Note at the time the loan was created and title to said Deed of Trust was given to Defendant MERS instead of the beneficiary of the Note who was Defendant AMERICAN BROKERS. Therefore, Plaintiffs are entitled to have the Deed of Trust adjudged void and without any legal force or effect on this basis and an order that the Deed of Trust be cancelled from the official records of Santa Cruz County.

152.    Furthermore, as herein alleged, the assignment and/or physical transfer of the note and deed of trust by MERS as nominee for AMERICAN BROKERS to DEUTSCHE BANK as Trustee was ineffective because AMERICAN BROKERS was in Chapter 11 bankruptcy at the time the assignment and/or physical transfer purportedly took place and the assignment and/or physical transfer was unauthorized.

153.    Furthermore, the assignment to DEUTSCHE BANK as Trustee was unauthorized because the Trust had already closed.

154.    Furthermore, the Notice of Default and Notice of Trustee's Sale were unauthorized or a nullity for the above reasons.

155.    Furthermore, the Notice of Trustee Sale was published and recorded in violation of the automatic stay in the Plaintiffs' Chapter 13.

156.    Furthermore, the Notice of Default violated California Civil Code Section 2923.5, and on these grounds should be adjudged void and of not force or effect, and an order canceling said instrument from the official records of Santa Cruz County.

157.    In view of the above, it is requested that this court cancel the abovementioned records from the Official Records of the County of Santa Cruz .

**PRAYER FOR RELIEF**

Plaintiffs RICHARD CHALGREN and KAREN CHALGREN demand a trial by jury.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

a)    For general damages according to proof;

b)    For interest on such damages in an amount according to proof;

c)    For special damages according to proof;

d)    For the imposition of exemplary damages;

e)    For punitive damages;

f)    For an injunction;

g)    For declaratory relief;

h)    For costs of suit incurred herein;

i)    For Plaintiffs' recovery of their attorney's fees and costs incurred in this action; and

j)    For such other relief and further relief as this Court deems just and proper.

DATED: July 11, 2011                    ABDALLAH LAW GROUP, P.C.


MITCHELL L. ABDALLAH
Attorneys for Plaintiffs,
RICHARD CHALGREN
and KAREN CHALGREN